JAMES M. ADAMS *vs.* GEORGE M. WAY.

A bond guaranteeing that the obligee should be able to collect a debt out of certain mortgage security and that the obligor would otherwise pay the debt, contained a proviso that if the obligee should be unable to collect the debt by reason of want of title in the mortgagor, the guarantor should not be bound to pay it. Held that this proviso, not being a part of the covenanting clause, need not be negatived in a declaration on the guaranty.

The act of Congress prescribing the mode of proving the judgments of the courts of one state in those of another does not apply to the United States courts.

The District Court of the United States for a district out of this state is to be regarded as a domestic and not a foreign court.

The records of such a court may be proved by a copy under the seal of the court without further attestation.

Where a bond for the payment of money was upon twelve per cent. interest, in a state where such interest was lawful, it was held, in a suit against a guarantor of the debt, that after the principal became due damages for the detention of the money should be computed at the same rate.

Where a guarantee of a mortgage described the mortgage as being for three years, but the mortgage in fact contained a provision that it might be foreclosed at any time upon failure to pay the interest, evidence was introduced in a suit on the guaranty that the guarantor read the mortgage and knew of the provision in question. The guarantor denied this, and to confirm his statement, and to show that his attention was called to the subject by reason of the probable rise of the property in value during the three years' time that the mortgage had to run, he was asked by his counsel what would probably have been the case as to the value of the property. Held inadmissible.

ACTION upon a covenant given by the defendant to secure the payment of a loan made by the plaintiff to Leonard

Kennedy and Leonard W. Kennedy of Milwaukee in the state of Wisconsin, secured by a mortgage of real estate in Milwaukee executed by Leonard W. Kennedy and his wife. The bond and mortgage were dated December 3d, 1858, and were for the payment of $3,500 in three years from date, with interest at the rate of twelve per cent. per annum, payable semiannually ; the mortgage containing a provision that, upon the non-payment of interest when due, the whole sum should at the option of the creditor become due and payable, and the mortgage might be foreclosed.

The guaranty given by the defendant, which was dated the 17th day of December, 1858, was as follows :—

" Whereas L. & L. W. Kennedy of Milwaukee, propose to borrow of James M. Adams of Hartford, Connecticut, the sum of $3,500, at twelve per cent. interest per annum, payable semi-annually, and to provide security for the payment of the principal in three years, and interest as above, by procuring the wife of said L. Kennedy to join with her husband in executing a mortgage of lots 4 and 5 in Mabbit and Breed's sub-division of block 129 in the first ward of the city of Milwaukee, such loan and contract to be made in Milwaukee, under the laws of Wisconsin, so that the same should be legal and binding : and whereas, at my request and upon my promise and guaranty, the said Adams has been induced to consider said proposition ; now therefore, in consideration of the premises, and of the sum of one dollar to me in hand paid by said Adams, and for the further consideration that said Adams shall and does make to the said L. & L. W. Kennedy said loan upon the interest and security above expressed, I do hereby guarantee and promise that the land above described shall be a sufficient security for said loan and interest, and that upon the failure of said L. & L. W. Kennedy to pay any part of said principal sum at its maturity, or of the interest semi-annually, as they may agree, if the said Adams, his representatives or assigns, shall proceed according to the laws of Wisconsin to make said real estate available, and subject the same for the payment of said principal and interest unpaid, a sufficient amount shall be realized therefrom to

satisfy all principal and interest in arrears, and all legal costs and charges; and that I will indemnify the said Adams against all charges and liabilities incurred by him in such proceedings, and which are agreed to be paid in and by said mortgage; and that if the said land shall not, under such proceedings, realize to said Adams, his representatives or assigns, enough to pay in full the debt and interest aforesaid, and also his costs and charges as agreed to be paid in and by said mortgage, then I will, upon demand, pay to said Adams, his representatives or assigns, such amount as shall be required to pay said interest, debt, and all costs agreed to be paid in and by said mortgage, so that the said Adams, his representatives or assigns, shall realize the whole amount of his loan and interest at twelve per cent. per annum, for the whole period, clear and free of all expenses, costs and charges incurred in making such loan or recovering the same, such as are not included or mentioned in said mortgage, meaning hereby to guarantee to said Adams, his representatives or assigns, the full payment of said loan of $3,500 and interest at twelve per cent. per annum, and all costs and expenses accruing in the collection of the same, as agreed in and by said mortgage to be paid.   Provided said Adams, his representatives or assigns, shall use due diligence to recover the same of and from the mortgage security proposed to be given as above; and also provided that if the said Adams shall be unable to collect the whole or any part of said debt, interest and expenses, by reason of want of title of said Kennedy or his wife in and to said property so mortgaged, then this guaranty shall be void and of no effect.   And it is hereby further provided, if the said L. & L. W. Kennedy shall neglect or refuse to pay any of said installments of interest within one month after the same become due by the terms of said mortgage, that then, unless the said Adams, his representatives or assigns, shall, within one month after the time I shall notify them of said non-payment, proceed against said mortgaged property, and use all due diligence to obtain the amount of said interest therefrom, then this guaranty shall become null and void.   In witness whereof I have hereunto set my hand and seal, this 17th day of December 1858.     GEORGE M. WAY." [L. S.]

These papers were all executed and delivered previous to the payment of the money by the plaintiff, which was on the 28th of December, 1858.

The declaration set forth the bond, mortgage and guaranty, with averments as to the making of the loan upon them by the plaintiff, and as to the legality of the same under the laws of the state of Wisconsin, and proceeded substantially as follows :—

That the land so mortgaged to the plaintiff as security for said loan was not a sufficient security therefor; that the first semi-annual installment of interest became due thereon on the 3d day of June, 1859, and the said L. & L. W. Kennedy neglected to pay the same; that the plaintiff, on the 4th day of June, 1859, demanded the same, and afterwards, on the 3d day of July, 1859, gave notice to the defendant of their default, and the defendant thereupon requested him to exercise his option as provided in the mortgage, and to elect that the principal sum should become due and payable, and to proceed according to the laws of Wisconsin to make the real estate available, and subject the same for the payment of the principal and interest; that he did then and there, on such default, elect that the principal sum should then become due and payable, and notified the said L. & L. W. Kennedy of his election, and thereupon, by the condition of the mortgage, said principal sum then became due and payable; that the said L. & L. W. Kennedy have at all times refused to pay said principal and interest, or any part thereof, and that the plaintiff within one month after the request of the defendant did proceed according to the laws of Wisconsin to make said real estate available for the payment of said debt and subject the same to the payment thereof; that for that purpose the plaintiff, on the 22d of July, 1859, instituted suit for a foreclosure of said mortgage, in the District Court of the United States for the district of Wisconsin, in which suit such proceedings were had that afterwards, on the 27th day of August, 1860, by virtue of a decree of said court, said mortgaged premises were sold at public auction in the city of Milwaukee, for the sum of $2,650, and said sum was then and there paid to the plaintiff

Adams *v.* Way.

in part payment of said sum of $3,500 secured by said mortgage and the interest then due thereon, which principal and interest at the time of said sale amounted to the sum of $4,154.79 ; that in conducting said suit and said sale he was obliged to pay taxable costs amounting to the sum of $71.06, and solicitors' fees to the amount of $100 ; that all the aforesaid proceedings were had under and according to the laws of Wisconsin, but that a sufficient amount was not realized from the sale of said mortgaged premises to satisfy all the principal and interest in arrears on said debt and all legal costs and charges agreed to be paid in and by said mortgage, although he used due diligence to recover the same out of said mortgage security, but that there is still due to the plaintiff the sum of twenty-five hundred dollars, including the costs and charges agreed to be paid in and by said mortgage. And the plaintiff says that neither the said L. Kennedy nor the said L. W. Kennedy has ever paid said sum of $2,500, nor has the defendant ever paid said sum, but that the same still remains due and unpaid, of all which the defendant had notice, &c.

The case was tried in the superior court in Hartford County, upon a general denial, with notice, closed to the court, before *Loomis, J.*

Upon the trial the plaintiff offered in evidence a paper purporting to be a true copy of the record and proceedings in the foreclosure suit described in the declaration in the District Court of the United States for the district of Wisconsin, and which was certified by the clerk of the court, who affixed the seal thereof to the paper, to be a true copy of such record and proceedings. The defendant objected to the admission of this paper in evidence on the ground that the same was not further authenticated by a certificate of the chief justice or presiding magistrate of the court that the attestation of the clerk was in due form. The court overruled the objection and admitted the evidence.

In the progress of the trial the plaintiff offered evidence to prove, and claimed that he had proved, that the bond and

mortgage were procured by L. W. Kennedy without his knowledge and without any directions from him, and that when they were shown to him he refused to make the loan upon them unless the defendant, (who was an uncle of L. W. Kennedy,) would guarantee the loan, and unless he could be indemnified against all the expenses of making the loan and collecting the same when due ; that thereupon L. W. Kennedy applied to the defendant to guarantee the loan and showed him the bond and mortgage, and that the defendant then saw and read the same and understood the contents and provisions thereof. The defendant on his part denied all this, and offered himself as a witness, and testified that until about a week prior to the trial he had never seen the bond and mortgage ; that prior to the execution of the guarantee he simply knew that a bond and mortgage had been prepared, but knew nothing of their contents except what he learned from the guarantee itself, which he signed ; that he knew nothing about the provision whereby the principal might become due upon neglect to pay the interest ; and that, had he supposed the mortgage could be foreclosed so soon, he would not have signed the guaranty. The counsel for the defendant, for the purpose of confirming his testimony and to show that his attention was specifically drawn to the time the loan was to run by the fact that the property was likely to rise in value, asked him what would probably have been the case as to the value of the property. To this question the plaintiff objected, and the court rejected the same.

The plaintiff claimed that he was entitled to recover as damages the sum of $1,738.34, being the amount due on the day of the sale of the mortgaged premises, after deducting the net proceeds of the sale, together with interest at the rate of twelve per cent. to the time of rendering judgment in the present suit, this rate of interest being allowed by the laws of Wisconsin when agreed upon specially by the parties to the loan. In ascertaining the amount due on the day of the sale, interest was reckoned on the sum of $3,500 from the time it was paid to Kennedy by the plaintiff, until the decree of foreclosure was passed, and from the date of the decree to the day

Adams *v.* Way.

of the sale at the rate of seven per cent., that being the rate of interest allowed by the laws of Wisconsin on judgments and decrees in certain cases. The defendant claimed that interest at the rate of twelve per cent. should cease to run either at the date of the decree or at the date of the sale and the receipt of the proceeds by the plaintiff, and that after one or the other of those dates interest on the debt should run only at the rate of six per cent. or seven per cent., the latter being the rate of interest allowed by the laws of Wisconsin when no special rate is agreed upon by the parties. The plaintiff and defendant, when the guaranty was executed and delivered, were both inhabitants and residents of Hartford, in the state of Connecticut. The court overruled the claims of the defendant on this point, and rendered judgment for the amount and the rate of interest claimed by the plaintiff.

The defendant moved for a new trial.

The defendant also moved in arrest of judgment for the insufficiency of the declaration, which motion having been overruled by the court, he filed a motion in error, assigning as error the omission of an allegation that the failure to collect the debt was not caused by a want of title in the mortgagors, the guaranty containing a provision that the guarantor should not be held liable if the debt was not collectible for such a cause.

*T. C. Perkins,* in support of the motion.

1. When an exception is incorporated in the general clause, it must be negatived in the declaration. 1 Chitty Pl., 223, 310 ; *Vavasour* v. *Ormrod,* 6 Barn. & Cress., 430 ; *Tempany* v. *Burnaud,* 4 Camp., 20 ; *Sicklemore* v. *Thistleton,* 6 Maule & Selw., 9 ; *Howell* v. *Richards,* 11 East, 633.

2. The certificate of the record was insufficient. Foreign judgments must be authenticated either by an exemplification under the great seal, by a copy proved to be a true copy, or by the certificate of an officer authorized by law, which certificate must be itself properly authenticated. *Church* v. *Hubbart,* 2 Cranch, 238 ; 1 Greenl. Ev., § 514. The several states of the union are foreign to each other. *Buckner* v.

*Finley*, 2 Peters, 590 ; id. appx., 689.   The courts of the United States are foreign courts.   *Walsh* v. *Durkin*, 12 Johns., 100 ;   *Tooker* v. *Thompson*, 3 McLean, 92, 94 ; *White* v. *Whitman*, 1 Curtis, 494 ; *Smith* v. *Atlantic Mutual Ins. Co.*, 2 Foster, 21.

3.  Too much interest was allowed.   This is not a loan by Adams to Way in which the latter agrees to pay twelve per cent. for a loan.   Way is a mere surety that certain property when sold shall bring the amount of a certain debt.   The guaranty was executed in Connecticut.   There is no express stipulation to pay twelve per cent. interest.   The agreement is only that if the mortgage does not pay the debt and interest he will make it up.   He being only surety, if Adams meant to hold him for more he should have had it expressed.

4.  Way's evidence as to the rise of the property in value was improperly excluded.   It is important to see the exact condition of the testimony when this question arose.   The plaintiff had introduced proof that Way knew of the contents of the mortgage.   This involved his knowledge of the fact that the whole debt might become due and payable at the end of six months.   Way was then introduced who denied all this.   The testimony it is true was of the character of merely negative evidence ; but negative evidence may be as strong as positive under certain conditions, as where the matter was one of importance or the circumstances were such that the attention of the party must have been called to the subject.   3 Cowen and Hill's Notes on Phill. Ev., 579. Here it was an important fact that the mortgaged property would probably rise in value and thus add to the security. Was it not reasonable therefore to show this fact ?

*Hyde* and *McFarland*, contra.

1.  The declaration is sufficient.   The provision in the guaranty is as follows : " If the said Adams shall be unable to collect the whole or any part of said debt, interest and expense by reason of want of title of said Kennedy, or his wife, in the property so mortgaged, then this guaranty shall be void and of no effect."   It is sufficient to say of this that

Adams *v.* Way.

it is strictly in the nature of a condition subsequent. It is a provision that if a certain thing should happen, then the defendant should be released. Now if the defendant seeks to avoid liability on the ground that it has happened, he must set up that fact and prove it. If it was a provision that in case a certain thing happened, then the defendant would be liable, then in order to show that the defendant was liable, it would be for the plaintiff to set it up and prove that it did happen. *Matthews* v. *Taylor*, 2 Man. & Grang., 667; *Dale* v. *Dean*, 16 Conn., 579; *State* v. *Miller*, 24 id., 522; Taylor on Ev., 249.

2. It is claimed that the records of the United States District Court were not authenticated according to the act of Congress. But the act of Congress has no application to the United States courts. This is clear—1. From the language of the act, which is conversant only about the state courts. 2. From decided cases. *Williams* v. *Wilkes*, 14 Penn. S. R., 228; *Mewster* v. *Spalding*, 6 McLean, 24.

3. It is claimed that certain evidence which the defendant proposed to give was improperly ruled out. The defendant had a right to state, and did state, that he never saw the mortgage and knew nothing of its contents, and the reason why he knew that he did not. This was not objected to or ruled out. The question, however, whether these suppositions were correct or incorrect, had nothing whatever to do with the case and could not affect the rights of the plaintiff. This raised an immaterial issue, the determination of which either way could not affect the case.

4. As to the question of interest. Let us place this question first upon principles of natural justice, and see how it stands. The defendant agrees in the most explicit language that if enough is not realized from the mortgaged premises he will pay such an amount as may be necessary to make up the loan with twelve per cent. interest. It is within the very letter as well as spirit of his undertaking. Why should he not be required to do it? Especially when, by refusing to recognize any liability under the guaranty and repudiating it, he has subjected the plaintiff to great expense in asserting his claim,

which renders it impossible in any event for him to obtain what the defendant agreed he should obtain. It is just then that he should be required to pay this rate of interest. In the second place, this claim not only rests on principles of natural justice, but it is supported by the very letter of the law. The case of *Beckwith* v. *Trustees of Hartford, Providence & Fishkill Railroad,* 29 Conn., 268, settles the law so far as this state is concerned, that where parties agree upon any lawful rate of interest the rate agreed upon is to be taken in assessing damages for non payment.

CARPENTER, J. The several questions presented by the record in this case, and relied upon by the defendant's counsel, will be considered in their order.

1. The first arises under the motion in error, and relates to the sufficiency of the declaration. The contract declared on contains the following proviso:—" Provided that if the said Adams shall be unable to collect the whole or any part of said debt, interest and expenses, by reason of want of title of said Kennedy or his wife in and to said property so mortgaged, then this guaranty shall be void and of no effect." The declaration does not negative this proviso, and the defendant claims that this omission renders the declaration insufficient. The proviso does not enter into the description of the covenant, and forms no part of the covenanting clause. The rule is well settled in this state and at common law, that provisos and exceptions of this character need not be noticed in the declaration, but that the defendant, if he would avoid liability by reason of anything therein contained, must set up the facts relied upon and prove them as matter of defense. Gould's Pleading, 165, 166 ; *State* v. *Miller*, 24 Conn., 522 ; *State* v. *Powers*, 25 Conn., 48 ; *Matthews* v. *Taylor*, 2 Mann. & Grang., 667 ; *Brooke* v. *Spong*, 15 Mees. & Wels., 153. The declaration therefore is sufficient.

2. The declaration sets forth certain proceedings in the District Court of the United States for the district of Wisconsin. To prove that part of the declaration, the plaintiff offered in evidence a paper purporting to be a copy of such

proceedings, certified by the clerk of said court under the seal thereof to be a true copy, but not otherwise certified or proved. To the admission of this paper in evidence the defendant objected, on the ground that the same was not further authenticated by a certificate of the judge, chief justice, or presiding magistrate of said court, that said attestation was in due form. The court overruled the objection and admitted the evidence. Whether this ruling was correct is the next question to be considered. This, together with the succeeding questions, properly arises on the motion for a new trial.

The act of Congress provides " that the records and judicial proceedings of the courts of any state shall be proved or admitted in any other court within the United States, by the attestation of the clerk and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice or presiding magistrate, as the case may be, that the said attestation is in due form." This act was designed to carry into effect the first section of the fourth article of the constitution of the United States. Both the constitution and the statute are limited in terms to the records and judicial proceedings of state courts ; and it has been held that the statute does not apply to the United States courts. *Pepoon* v. *Jenkins,* 2 Johns. Cas., 119 ; *Williams* v. *Wilkes,* 14 Penn. S. R., 228.

The act of Congress having no application to this case, it remains for us to inquire whether the paper is otherwise sufficiently authenticated. And that depends upon the further question whether the district court of the United States for the district of Wisconsin is to be considered a foreign or domestic court. If the former, the copies, not being authenticated in any mode recognized by law, should have been rejected. 1 Greenl. Ev., §§ 488, 513 ; *Church* v. *Hubbart,* 2 Cranch, 238.

. But we are of the opinion that the several courts of the United States are not foreign courts ; although in some of the states they may be treated as such for certain purposes. It will not be denied that the constitution of the United States, and the laws of Congress passed in pursuance thereof, will be

judicially recognized by the courts of this state. The several courts of the United States are called into existence by act of Congress under the constitution and their powers and duties specifically defined by statute. Such courts therefore, together with their seals, will also be judicially recognized. In the case of *Womack* v. *Dearman,* 7 Porter, 513, the Supreme Court of Alabama says:—" The constitutional courts of the United States certainly can not be considered as foreign, in any sense of the term. They are domestic tribunals, whose proceedings all other courts of the country are bound to respect and receive when exemplified under the seal of the courts ; and such seal is presumed to be known, and establishes itself in the same manner as each court within a state is presumed to know and recognize the seal of any other court within the same state." The cases of *Pepoon* v. *Jenkins,* 2 Johns. Cas., 119, and *Williams* v. *Wilkes,* 14 Penn. S. R., 228, are to the same effect. We think these cases are correct in principle, and that the court below did right in receiving the evidence.

3. The plaintiff claimed that L. W. Kennedy applied to the defendant to guarantee said loan, and exhibited to him the said bond and mortgage, and that he saw and read the same, and understood the contents and provisions thereof. This the defendant denied, and testified as a witness that until about a week before the trial of this case he had never seen said bond and mortgage, and knew nothing of their contents except what he learned from the guaranty itself, which he signed ; that he knew nothing about the provision whereby the principal might become due upon neglect to pay the interest ; and that had he supposed the mortgage could be foreclosed so soon he would not have signed the guaranty. To confirm his testimony in this respect, and to show that his attention was specifically drawn to the time the loan was to run, his counsel asked him in substance whether the property would not be likely to rise in value. The plaintiff objected to the question and the answer to be obtained thereby, and the court rejected the same. We think this ruling was correct. Admitting it to be true that the property would prob-

ably rise in value, we are unable to see how that fact would add to the weight of his testimony, or show that his attention was particularly directed to it at the time. He might have believed that the property would rise, and the fact that he did so believe might be a circumstance that would enable him to speak with more confidence, and perhaps would legitimately add weight to his testimony. So far as his mere belief was concerned, it does not appear but what he had the full benefit of it. Whether that belief was well founded or otherwise, is quite a different question. If well founded it would add nothing to his testimony ; if not well founded it would take nothing therefrom. It was a collateral issue, calculated to divert the attention of the triers from the real issue in the case, and evidence on that subject was properly rejected.

4. It only remains for us to consider the question of interest. It seems that the loan was made to L. & L. W. Kennedy of Milwaukee, and secured by mortgage on real estate there situated, and that the rate of interest agreed upon was twelve per cent.—a legal rate there, and consequently legal here. The defendant by his contract guaranteed the payment of said loan with interest at twelve per cent ; and also, that the property mortgaged should be sufficient to pay said loan and interest ; and in case it was insufficient for that purpose that he would make good the deficiency, so that the plaintiff should realise the full amount of his debt, principal and interest, at the rate agreed upon. The defendant then is clearly liable, by the express terms of his contract, to pay interest at the rate of twelve per cent. up to the time the debt became due.

But it is contended that after that time the legal rate only could be collected.

In the case of *Beckwith* v. *The Trustees of the Hartford, Providence and Fishkill Railroad,* 29 Conn., 268, the Supreme Court decided that the rule of damages for the detention of the principal after it became due, was the same as the rate of interest agreed upon by the parties. That decision must govern this case. The plaintiff's claim against the origi-

nal debtors consists of the principal and interest at the rate of twelve per cent. while it remains unpaid. The defendant has contracted in the most unequivocal manner to pay that debt. It hardly requires an argument to show that he can only fulfil his contract by paying the whole debt.

It is said that by the laws of Wisconsin interest on judgments and decrees in certain cases is only seven per cent. and that that rate only should have been allowed after the decree of foreclosure in that state. If the debt was merged in that decree, and it clearly appeared that that decree would carry only seven per cent. interest, this claim would seem to be well founded. But the difficulty is that it does not appear that the proceedings in Wisconsin merged this debt; nor can we presume such merger, especially as similar decrees in our own state do not have that effect. On the whole we can not see that the defendant has any cause of complaint in respect to the matter of interest.

The motion for a new trial must therefore be denied.

In this opinion the other judges concurred; except Mc-CURDY, J., who did not sit.